624 A.2d 175

**Roberta RUSSELL, Appellant,**

v.

**Raymond E. HUBICZ, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1992.

Filed April 29, 1993.

122

Ronald P. McCall, Sharon, for appellant.

George H. Rowley, Greenville, for appellee.

Before McEWEN, FORD ELLIOTT and MONTGOMERY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the judgment entered in appellee's favor according to the jury's verdict on February 19, 1992, in the Court of Common Pleas of Mercer County. We affirm.

On December 19, 1986, two vehicles driven by Roberta Russell, appellant, and Raymond Hubicz, appellee, were involved in a collision. The accident occurred at the intersection of Sharon–New Castle Road and Mercer Avenue, Mercer County, as appellant was attempting to make a left turn. At the time of the accident, Janice Stokes and Thomas Russell were passengers in appellant's vehicle.

Following the accident, Roberta Russell filed suit against Raymond Hubicz, alleging that he was negligent in operating his vehicle and that his negligence caused the accident. At trial, Roberta Russell offered the testimony of both passengers in her vehicle during her case-in-chief. Both Janice Stokes and Thomas Russell testified favorably to Roberta

Russell, indicating that at all times she was driving carefully and cautiously. However, on cross-examination, Stokes was confronted with allegations of negligence on the part of Roberta Russell contained in a complaint she had previously sworn out against Russell. Furthermore, on cross-examination of Thomas Russell, there were questions concerning a prior felony conviction which called into question his veracity. Appellant's counsel objected to both lines of questioning but was overruled in each instance.

At the conclusion of the trial, the jury found Hubicz to be only 35% negligent and Russell to be 65% negligent. Appellant filed post-verdict motions challenging the trial court's rulings on her objections to the cross-examinations of Stokes and Russell. The trial court subsequently denied the post-trial motions. This timely appeal followed.

Appellant presently raises three issues for our consideration.

I. Whether the trial court erred in permitting the defendant to cross-examine the plaintiff's witness with regard to her complaint in civil action, filed against the [plaintiff] as to conclusions of law contained therein relating to the ultimate issue of the case (i.e., which party was negligent and caused the accident) and as to portions of the complaint which were neither made nor adopted by the witness?

II. Whether the trial court erred in refusing to allow the introduction into evidence of other portions of the complaint in civil action of the plaintiff's witness dealing with allegations of fact and her allegations of negligence against defendant which were consistent with her testimony on direct examination, for purposes of rehabilitation?

III. Whether the trial court erred in allowing the defendant to cross-examine a witness of plaintiff about his prior criminal record without first ascertaining the specific crime or crimes he might have committed, the date of the crime, whether it was committed as a juvenile or an adult, and without balancing the probative value of the evidence against its prejudicial effect upon the jury and whether

the court erred in placing the burden of showing the inadmissibility of that evidence upon the [plaintiff]?

We shall address appellant's issues in the order presented.

Appellant's first issue concerns the cross-examination of one of her witnesses, Janice Stokes. During trial, Janice Stokes testified as a witness on behalf of appellant. At the time of the accident, Mrs. Stokes was a passenger in the front seat of appellant's vehicle. Mrs. Stokes testified, during direct examination, that appellant saw the Hubicz vehicle when it was a considerable distance from the intersection; that when appellant started her turn, the Hubicz vehicle was not close enough to be a threat; and that appellant, at all times, was moving slowly.

Prior to offering such testimony, Mrs. Stokes had, herself, filed suit against both Russell and Hubicz to recover damages for injuries she received as a result of the accident. On cross-examination, counsel for Hubicz confronted Mrs. Stokes with the allegations of the complaint she had filed. Specifically, Mrs. Stokes was questioned regarding the allegations in her complaint against Russell, which directly contradicted her testimony on direct examination. In particular, Mrs. Stokes was asked about the allegations in her complaint that Russell was negligent in failing to keep a sharp lookout; that Russell was negligent in failing to observe the presence and proximity of the Hubicz vehicle; that Russell was negligent in turning when the Hubicz vehicle was so close as to constitute a hazard; that Russell was negligent in turning her vehicle when it could not be done safely; and that Russell drove at an excessive rate of speed.

Appellant maintains that the trial court erred in permitting appellee's attorney to reference the allegations from Mrs. Stokes' complaint, when cross-examining her. According to appellant, the line of questioning was improper since the allegations referenced from the witness's complaint related to her opinion on the ultimate issues of the case; who was negligent; and what caused the accident. In support of her argument, appellant cites to case law holding that, as a general rule, a witness is not permitted to express an opinion

as to the ultimate issue of a case. *See Taylor v. Fardink,* 231 Pa.Super. 259, 331 A.2d 797 (1974). Appellant also expresses concern that the allegations from Mrs. Stokes' complaint, which were read into testimony, amount to legal conclusions, which should not have been presented to the jury.

We agree with appellant's statement of the law that generally, a witness is not permitted to express an opinion as to the ultimate issue of the case. However, the allegations introduced during cross-examination were not introduced as evidence on the ultimate issue of liability. Rather, the allegations were introduced for the limited purpose of impeaching Mrs. Stokes to the extent that she had testified on direct examination that appellant had operated her vehicle in a careful, cautious, and prudent manner. In fact, immediately following cross-examination, the trial judge instructed the jury as to the limited purpose for which the statements in the prior complaint were to be considered. The trial court instructed the jury that counsel for appellee had a right to attack the credibility of a witness by showing prior inconsistent statements. However, as the trial court noted in its instructions, the prior inconsistent statements were not necessarily true regarding the issue of fault and should not be considered in such a manner.

A similar issue was previously addressed by our supreme court in *Monaco v. Gula,* 407 Pa. 522, 180 A.2d 893 (1962). *Monaco* involved a two-vehicle accident wherein a passenger in the lead vehicle was injured when the vehicle in which she was riding was rear-ended. Passenger filed suit against the driver of the second vehicle. The driver of the second vehicle, in turn, filed an additional defendant complaint against the driver of the vehicle that plaintiff was occupying. In the additional defendant complaint, the driver of the second vehicle alleged that the driver of the lead vehicle caused the accident by making a sudden stop without warning. Prior to trial, the driver of the second vehicle withdrew his additional defendant complaint.

At trial on the original complaint, the driver of the second vehicle testified, contrary to the allegations in the withdrawn

complaint, that the accident was caused solely by the slippery condition of the highway. An attempt was made to introduce the allegations from the withdrawn complaint, but the trial court ruled that the prior statements were inadmissible. On appeal, the supreme court reversed the decision of the trial court, holding:

> [T]hat a prior statement made by a party to a suit which contradicts the testimony of that party at trial as to the cause of an accident is admissible in evidence. Not only is the statement substantive evidence of the matter under inquiry, and, therefore, worthy of the jury's consideration, but, in addition, it may be used to impeach the credibility of the party, and, toward this end, opposing counsel may cross-examine the party on the allegations contained therein.

*Id.* at 524, 180 A.2d at 894.

Presently, we are not confronted with the prior statements of a party to a suit, but rather a witness. Thus, we would not conclude that the prior statement in this instance is substantive evidence of the matter under inquiry. The jury did not reach such a conclusion either. However, according to *Monaco* such prior statements should be permitted for the purpose of impeachment, which is precisely what occurred in this instance.

Appellant is in no position to complain that the allegations from Mrs. Stokes' complaint should not have been admitted because they offer opinion as to the ultimate legal issue in the case; when, on direct examination, counsel for appellant elicited favorable opinion testimony from this same witness on the ultimate issue of liability. The cross-examination was only permitted to counter assertions as to appellant's care and conduct in operating her vehicle offered by this witness during direct examination.

Professor Wigmore addressed the concerns presently raised by appellant as follows:

> The usual answer of some courts is that the declaration should be excluded because it is mere opinion. This is unsound, (1) because the declaration is not offered as testimony, and therefore the opinion rule has no application, and

(2) because the declaration in its opinion aspect is not concerned, and is of importance only so far as it contains by implication some contradictory assertion of fact. In short, the only proper inquiry can be, 'Is there within the broad statement of opinion on the general question some implied assertion of fact inconsistent with the other assertion made on the stand?' If there is, it ought to be received, whether or not it is clothed in or associated with an expression of opinion.

*Wigmore on Evidence,* Vol. III A (4th ed.), § 1041, at 1052 (1986).

Thus, while the allegations of the Stokes' complaint contain a mixture of factual and legal assertions, so too did her testimony on direct examination. To the extent that this caused some inconsistency in her assertion of facts, the inconsistency needed to be brought to the jury's attention so it could properly assess credibility.

■ Appellant's second issue is closely related to the first. According to appellant, the trial court erred in refusing to allow her to read the portions of Stokes' complaint to the jury, concerning Hubicz's alleged negligence. Appellant maintains that once Stokes was impeached with part of her complaint, the remainder should have been admitted to meet the cross-examination and for purposes of rehabilitating the witness.

Appellant's argument fails for two reasons. First, it is well-settled law in this Commonwealth that prior consistent statements of a witness are only admissible under two specific circumstances: (1) where it is alleged that the in-court testimony has been recently fabricated, or (2) where it is alleged that the witness is testifying from corrupt motives. *See Baldino v. Castanga,* 308 Pa.Super. 506, 454 A.2d 1012 (1982). Neither of these circumstances are present in this instance. Accordingly, the trial court exercised sound discretion in disallowing the prior consistent statements in Stokes' complaint in an attempt to rehabilitate her.

The second, and more basic, reason for disallowing the allegations of the Stokes' complaint regarding Hubicz's alleged

negligence, is that such portions of the complaint had absolutely nothing to do with the subject matter upon which Stokes was impeached during cross-examination.[1] On direct, Mrs. Stokes testified that appellant was operating her vehicle safely and Hubicz was not. On cross-examination, Stokes was impeached with prior inconsistent statement regarding appellant's conduct. The allegations in Stokes' complaint that appellant sought to introduce on re-direct examination had absolutely nothing to do with appellant's conduct in operating her vehicle. Thus, there is no possible way that these allegations could have rehabilitated Stokes' testimony as to appellant's conduct. At most, the allegations would have merely been cumulative as to Stokes' unchallenged direct testimony about Hubicz's conduct. Accordingly, admissibility of this evidence was properly denied.

The final issue raised by appellant concerns the trial court's decision to admit into evidence the prior conviction of one of appellant's witnesses. At trial, appellant offered the testimony of her son, Thomas Russell, who was a passenger in her vehicle at the time of the accident. On cross-examination, the court permitted counsel for appellee to question Mr. Russell as to his prior criminal history. Appellant asserts that this was an error on the trial court's part.

In support of this argument, appellant refers us to *Carlson Mining Co. v. Titan Coal Co., Inc.*, 343 Pa.Super. 364, 494 A.2d 1127 (1985), as the seminal case announcing the test to be used in determining the admissibility of prior criminal convictions to impeach a witness in a *civil* action. In *Carlson Mining Co.*, this court was confronted with a challenge to the

1. Specifically, Stokes had alleged in her complaint that Hubicz was negligent: 1) in failing to keep a sharp lookout; 2) in failing to observe the presence and proximity of defendant Russell's automobile on the roadway; 3) in driving his vehicle at a speed greater than was reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing; 4) in operating his vehicle at a speed greater than would permit him to bring his vehicle to a stop within the assured clear distance ahead; 5) in failing to operate his vehicle at a safe and appropriate speed when approaching and crossing an intersection and when special hazards exist with respect to other traffic; 6) in violating 75 Pa.C.S.A. § 3361; and 7) in causing or permitting his vehicle to strike the Russell vehicle.

admissibility of evidence that a party in a civil action had previously been convicted of conspiracy to transport stolen goods in interstate commerce. In addressing the issue, this court recognized that Pennsylvania permitted the use of prior convictions to impeach witness credibility in criminal cases but acknowledged that Pennsylvania lacked any hard and fast rule as to the admissibility of prior convictions for impeachment purposes in a civil case. In setting out the rationale for the general rule on admissibility, we stated as follows:

> Evidence of proof of prior convictions to impeach witness veracity is a subset of character evidence generally. The underlying rationale for allowing impeachment by showing prior convictions is that a person who has demonstrated his contempt for social constraints by committing crimes is less reluctant to lie under oath than persons who have not been convicted of committing crimes.

*Id.* at 368, 494 A.2d at 1129 (footnotes omitted).

Accepting that such impeachment evidence is generally admissible, the court looked to its application in the context of a criminal prosecution in Pennsylvania. In particular, this court looked to the decisions in *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); and *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), for guidance. However, for our purposes today it is important to examine the context in which these cases were decided.

Both *Roots* and *Bighum* involved the use of prior convictions to impeach a defendant who testifies in his own behalf at trial, and both decisions recognized that the prejudice which can inure to a defendant under such circumstances required the creation of a different rule on admissibility in such cases. As set out in *Roots:*

> The right of an accused to testify as a witness in his own behalf is a fundamental tenet of American Jurisprudence. It is equally established that witnesses may be impeached by an opposing party. The introduction before the trier of fact of a prior conviction of the witness has long been recognized as an approved method of challenging credibility. Finally, all of our legal principles must conform to our

evolving concept of fairness. These precepts are beyond dispute and do not require the citation of authority. The difficulty arises when we are called upon to accommodate the sometimes competing interests sought to be accomplished by these various principles.

It would be naive to conclude that a lay finder of fact is capable of eradicating the prejudice which results from the knowledge of a witness's prior criminal record. Even the most conscientious and dedicated juror's objectivity will be, at least unconsciously, colored by such knowledge. Furthermore, there is serious question as to the true probative value of a prior conviction on the veracity of a witness. It has also been suggested that the rule is based more on tradition than tested behavioral analysis. These concerns are magnified where the question is whether the accused who seeks to testify on his own behalf may properly have his credibility attacked because of a prior conviction. Knowledge that his past convictions will be revealed to the jury, if he testifies, may well foreclose his only opportunity to present his version of the occurrence. In any event the serious potential of this evidence for unfairly influencing the jury on the issue of guilt is inescapable.

*Roots* 482 Pa. at 35–36, 393 A.2d at 365 (footnotes omitted).

Because of the competing interests involved in utilizing such impeachment evidence in a criminal case, the *Bighum* and *Roots* decisions rejected a *per se* rule of admissibility and instead fashioned specific criteria for the use of impeachment evidence against a criminal defendant. The *Bighum* court observed the federal courts in resolving the issue. The federal courts had begun to move away from the general rule of *per se* admissibility of prior criminal convictions for *crimen falsi* crimes. In particular, the *Bighum* court looked to a federal district court decision in *Luck v. United States,* 348 F.2d 763 (1965), as a model for fashioning a rule in Pennsylvania for addressing the question of admissibility of evidence of prior convictions when cross-examining a defendant in a criminal trial. Specifically, in *Luck,* the federal district court noted that when confronted with a question of admitting this type of

evidence, trial courts should move away from a *per se* rule of admissibility based on the nature of the prior crime. Rather, trial courts should start to consider and weigh various factors including: the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; probative value versus prejudicial effect. *Luck* at 769. The *Bighum* court agreed with the *Luck* approach and felt it should be utilized as well in Pennsylvania. Nevertheless, due to an incomplete record, the court in *Bighum* was unable to engage in a meaningful analysis of these various factors.

However, several years later, in *Roots, supra,* our supreme court was able to utilize this multi-factor analysis. The *Roots* court recognized that this approach was a departure from the prior, general principle of admitting evidence of any prior convictions, for impeachment purposes, of crimes involving dishonesty or falsehood.

> Thus the *Bighum* rule represented a significant change in the former practice as to the admission of prior convictions for impeachment purposes. First, it restricted the offenses which could be used for impeachment to crimes involving dishonesty or false statement. Equally as important, *Bighum* rejected a per se rule of admissibility even where the prior crime involved dishonesty or false statement. This was a clear departure from the prior practice that permitted the introduction of a *prior* conviction for *any felony* and embraced a per se rule of admissibility.

*Roots* 482 Pa. at 38–39, 393 A.2d at 366–67 (footnote omitted) (emphasis in original). The supreme court adopted this new analysis and, in situations involving the impeachment of criminal defendants, applied this test in determining the admissibility of prior convictions.

In turn, when deciding *Carlson Mining Co.,* this court specifically looked to federal cases and determined that there was no distinction drawn in their treatment of the issue in criminal and civil cases. The federal courts in civil cases had adopted the then applicable *Luck* standards. Therefore, it was decided that we should apply the same approach in

Pennsylvania; and *Carlson* adopted the *Bighum/Roots* approach in civil cases in determining the admissibility of a prior conviction for purposes of impeaching a witness.

Drawing from the federal cases, we conclude that the same standard should be used in a civil action to determine whether a conviction should be used to impeach as in a criminal action. Accordingly, the court below correctly used the test enunciated in *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978).

*Carlson Mining Co.* 343 Pa.Super. at 371, 494 A.2d at 1131.

Instantly, it is the trial court's failure to utilize the *Bighum/Roots* multifactor test that is alleged as error by appellant.

Interestingly, at the same time this court was adopting the *Bighum/Roots* rule for evaluating the impeachment of witnesses in civil actions, there was a recognition of a change in the federal rules back to *per se* admission of prior convictions involving crimes of falsehood or dishonesty.

The federal judicial system has modified its rule since *Luck* and *Gordon* [*v. U.S.,* 383 F.2d 936] to permit always the use of crimes of dishonesty and falsehood (crimen falsi), but leaves the matter to the trial court's discretion where the crime is serious, but does not involve dishonesty or falsehood, F.R.E. 609(a).

*Carlson Mining Co.* at 370, n. 8, 494 A.2d at 1130, n. 8.

Some ten years after its announcement of the *Bighum/Roots* standard, the Pennsylvania Supreme Court revisited the application of that standard by the courts of this Commonwealth and deemed it to be unworkable.

In *Bighum* and *Roots* this Court attempted to accommodate the needs of the Commonwealth to fully expose witnesses to the view of the jury, while at the same time protecting the defendant from a finding of guilt based solely on a prior history. It was the obvious desire of the Court to provide some objective criteria for determining the admissibility of prior convictions. However, that criteria has prov-

en less than exact, and has done more to engender appeals than to guide courts and litigants. Therefore, the time has come to revise *Bighum* and *Roots* in favor of more concrete guidelines for the admission of prior conviction evidence. *Commonwealth v. Randall, infra* 515 Pa. at 414, 528 A.2d at 1328.

■ In *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987) (Dissenting Opinions by Chief Justice Nix and Justice Zappala), the court found the revised federal rules to be persuasive and abrogated the *Bighum/Roots* standard in favor of a modified *per se* rule of admissibility of *crimen falsi* prior convictions.

> Therefore, while we do not adopt the federal rule *per se* we do modify our current rule to the following extent: evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of the conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Id.* at 415, 528 A.2d at 1329. Thus, in Pennsylvania, the current test for admissibility of prior convictions to impeach a criminal defendant is: (1) was the conviction for an offense involving dishonesty or false statement and (2) is the prior conviction less than ten years old. If both of these conditions are met, then impeachment by prior criminal offense is automatically allowed. If either of these conditions is unmet, then the court must balance the probative value of the impeachment evidence against its prejudicial effect.

■ Heretofore, this new test has not been formally adopted in a civil case. Appellant urges us not to do so instantly. However, we believe that logic and reasoning dictate that we now formally adopt the *Randall* rule in cases involving the impeachment of witnesses in civil actions. There are two reasons for our decision.

First, the original rule addressing the impeachment of witnesses in civil cases using prior criminal convictions, was expressly adopted from two criminal cases: *Bighum, supra,* and *Roots, supra.* It was the rule developed from these cases which became the rule applicable in civil cases. The *Bighum/Roots* rule has now been modified by *Randall.* Accordingly, it is only fitting to correspondingly modify the rule in civil cases as well.

Second, the modification of the *Bighum/Roots* rule, in *Randall,* merely reflects a change in the federal rules returning the impeachment practice involving a criminal defendant to the prior practice of allowing admission of prior *crimen falsi* convictions to impeach any witness. As this was originally the general rule in our Commonwealth in all cases, and *Randall* has once again placed the criminal/defendant within the ambit of the original rule, it is logical to bring the civil/witness within its scope as well. *See Commonwealth v. Williams,* 371 Pa.Super. 509, 538 A.2d 557 (1988).

Since we formally adopt the *Randall* rule as setting forth the guidelines for impeaching a witness in a civil case with evidence of a prior conviction, we are only left to apply the rule to see if the evidence was properly admitted in this instance.

Mr. Russell's prior conviction did involve an offense constituting a *crimen falsi.* Mr. Russell was convicted of stealing an automobile. Also, the conviction was less than ten years old. Mr. Russell was convicted on July 17, 1984. The trial in the case *sub judice* occurred in March 1991. Accordingly, the modified test from *Randall* was satisfied and the evidence properly admitted. Furthermore, it bears noting that the trial court gave a cautionary instruction as to the limited use of such evidence, immediately following cross-examination.

In sum, because we find appellant's three issues lacking in merit, we affirm the judgment entered in appellee's favor.

Judgment affirmed. Jurisdiction relinquished.

McEWEN, J., files a concurring statement.

McEWEN, Judge, concurring:

The expression of position by the author of the majority view is, as her colleagues have come to expect, most perceptive and, as well, persuasive. Thus it is that I rush to concur in the decision of the majority to affirm the judgment entered by the trial court in favor of appellee. I differ, however, with the declaration of the majority that the *Randall*[1] rule should replace the *Bighum/Roots*[2] standard for the admission of evidence of a prior conviction for purposes of impeachment of a witness.

It strikes me that our esteemed colleague, Judge Peter Paul Olszewski, in *Carlson Min. Co. v. Titan Coal Co., Inc.,* 343 Pa.Super. 364, 494 A.2d 1127 (1985), expressed quite valid and abundant basis for reliance upon the discretion of the trial court to fairly balance in a civil proceeding the prejudicial/probative factors of the prior conviction of the witness. Moreover, I am not ready to accede to the federal system such presumption of enlightenment as to confer upon that system a lead role in the establishment of evidentiary principles. Since, in my view, the hues of factors and issues attendant a civil proceeding differ in essence and number from the focus of a criminal proceeding, I am compelled to the conclusion that the decision upon the admissibility of such evidence in a civil proceeding is more soundly left to the instincts and discretion of the trial judge than to an inflexible and rigid rule.

Nonetheless, since the decision of the trial court to admit the evidence of the prior conviction of the witness in the instant case did not compose such prejudice to appellant as to require a new trial, I concur in the decision of my eminent colleagues to affirm the judgment in favor of appellee.

---

1. *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987) (dissenting opinions by Chief Justice Nix and Justice Zappala).

2. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978).