COMMONWEALTH of Pennsylvania,
Appellee,

v.

Timothy P. McENANY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 6, 1998.

Filed May 13, 1999.

Royce L. Morris, Harrisburg, for appellant.

Francis Chardo, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before KELLY, BROSKY, and BECK, JJ.

KELLY, J.:

¶ 1 Appellant, Timothy McEnany, asks us to determine, *inter alia*, whether the trial court erred when it allowed the Commonwealth to introduce his conviction for receiving stolen property as evidence to impeach Appellant's credibility. We are also asked to determine whether the trial court erred when it precluded evidence that Appellant's alleged co-felon had not been charged with any crimes. We hold that the trial court properly permitted the Commonwealth to introduce Appellant's prior conviction as evidence to impeach his credibility. We also hold that evidence that Appellant's alleged co-felon was not charged with any crimes was irrelevant to the determination of Appellant's guilt or innocence and, therefore, inadmissible. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. On March 4, 1993, at 12:45 a.m., eighty-two-year-old Kathryn Bishop was found dead on the floor of her residence. Subsequent investigation revealed that Appellant and his cousin, the alleged co-felon, were at Ms. Bishop's residence to clean her chimney between the hours of 2:00 p.m. and 5:00 p.m. on March 3, 1993.

¶ 3 On March 7, 1993, Corporal Lester Freehling and Trooper Jeffrey Stansfield arrived at Appellant's house and asked him if he would accompany them to the police station. At this time, Corporal Freehling told Appellant that he was not required to go to the station, that he was not under arrest, and that the officers would bring him home at any time. Appellant agreed to go with the officers. Once at the police station, Corporal Freehling gave Appellant a *Miranda* form and told Appellant that he could stop the questioning at any time. Appellant said that he understood his rights and signed the waiver form.

¶ 4 The police questioned Appellant for several hours. During the questioning, Corporal Freehling posed the following scenario to Appellant

[y]ou and [alleged co-felon] were working at the old lady's house. [Alleged co-felon] had gotten a check for payment and seen a lot of money on the dining room table. You and [alleged co-felon] went to Shane's Bar and started drinking. [Alleged co-felon] told you about the old lady having a lot of money and came up with the idea to go back to the old lady's house and rob the old lady. You and [alleged co-felon] drove back to the old lady's house. You dropped [alleged co-felon] off and waited near the house in the truck. [Alleged co-felon] came back from the house with the money and probably didn't even tell you he had killed the old lady. The first you knew she was dead was when Trooper Lotwick and Stansfield showed up at your house on Friday.

This may not be exactly the way it happened, but it is pretty close to the truth, isn't it?

(N.T., 9/10/97 at 509). Appellant's immediate response was, "Yeah, I want to tell you what happened." Corporal Freehling stopped the questioning and left the room. At this time, Appellant blurted out to another trooper in the room, "It's that fucking beer. Every time I drink I get in trouble. I really fucked up this time."

¶ 5 Thereafter, Corporal Freehling returned and began to advise Appellant of his constitutional rights. Before he could finish, Appellant interrupted him and said that he wanted to do the right thing and that he knew what the right thing was. Appellant further stated that he wanted to tell what happened, but he did not want to do anything stupid and wanted an attorney present before he made a statement. All questioning of Appellant then ceased.

¶ 6 Subsequently, Trooper Stansfield obtained search warrants for Appellant's van and residence. From Appellant's residence, police seized the clothes Appellant wore on March 3, 1993. Investigation of Appellant's clothing revealed paint chips in

the pocket of Appellant's jacket. The paint chips were later found to match the paint chips found on Ms. Bishops hands. Fibers found on Ms. Bishop's body also matched those of the tee-shirt Appellant had worn on the day of the murder.

¶ 7 Pursuant to the search warrant for Appellant's van, the police seized Appellant's cellular phone. Investigation of the memory of Appellant's phone revealed that the last number dialed was Ms. Bishop's home telephone number. The police then obtained a search warrant to search Appellant's telephone records maintained by the Cellular One Telephone Company ("Cellular One"). A search of these records revealed two unanswered calls made to Ms. Bishop's residence at approximately 10:07 p.m. on the night she was murdered.

¶ 8 Prior to trial, Appellant filed an omnibus pre-trial suppression motion. Appellant's motion sought to suppress all evidence obtained by the police as a result of the search of Appellant's van and residence. The trial court denied Appellant's motion. The case proceeded to trial and a jury found Appellant guilty of second-degree murder, burglary, robbery, and criminal conspiracy.

¶ 9 On direct appeal, this Court affirmed the trial court's rulings on Appellant's motion to suppress. *See Commonwealth v. McEnany*, 446 Pa.Super. 609, 667 A.2d 1143 (1995). This Court, however, reversed Appellant's judgment of sentence and remanded the case for a new trial because the trial court erroneously permitted the Commonwealth to elicit testimony that impermissibly commented on Appellant's right to remain silent. *Id.*

¶ 10 On May 1, 1997, Appellant filed a second omnibus pre-trial suppression motion. Appellant's second suppression motion raised essentially the same issues that Appellant argued in his first omnibus pre-trial suppression motion. The trial court refused to consider the motion because it found that the issues had been previously litigated in Appellant's first omnibus pre-trial suppression motion and on Appellant's direct appeal to this Court.

¶ 11 On August 18, 1997, Appellant filed a motion *in limine* seeking to exclude Cellular One's telephone records, which established that Appellant called Ms. Bishop on the night of the murder. The trial court denied this motion because it found that the records fell within the business records exception to the hearsay rule.

¶ 12 The case proceeded to a second jury trial on September 10, 1997. Appellant testified on his own behalf. Over Appellant's objection, the Commonwealth was permitted to impeach Appellant with his 1986 conviction for receiving stolen property. On September 18, 1997, the jury found Appellant guilty on all charges and the trial court sentenced Appellant to life imprisonment. Appellant filed a timely notice of appeal.

¶ 13 Appellant raises the following issues for our review:

1. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLANT WAS NOT ENTITLED TO RAISE A SECOND OMNIBUS PRE–TRIAL MOTION ON REMAND AND IN ADOPTING THE LAW OF THE CASE DOCTRINE?

2. WHETHER THE TRIAL COURT MISAPPREHENDED THE RULING OF THIS HONORABLE COURT IN *COMMONWEALTH V. MCENANY*, 446 Pa.Super. 609, 667 A.2d 1143 (1995) BY ALLOWING A STATEMENT INTO EVIDENCE WHICH IMPROPERLY COMMENTED ON THE APPELLANT'S RIGHT TO REMAIN SILENT IN CLEAR CONTRAVENTION OF THIS HONORABLE COURT'S DIRECTION UPON REMAND OF THIS CASE?

3. WHETHER THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE APPELLANT'S APRIL 25, 1986, CONVICTION FOR THEFT BY RECEIVING STOLEN PROPERTY, WHEN SAID CONVICTION OCCURRED

MORE THAN TEN (10) YEARS PRIOR TO THE TRIAL OF THE APPELLANT IN SEPTEMBER, 1997?

4. WHETHER THE TRIAL COURT ERRED IN ADMITTING THE CELLULAR PHONE RECORDS WHICH CONSTITUTED COMPUTER–GENERATED PRINTOUTS WHICH WERE HEARSAY DOCUMENTS AND DID NOT FALL UNDER ANY RECOGNIZED EXCEPTION TO THE HEARSAY RULE?

5. WHERE THE PROSECUTION'S THEORY OF THE CASE REVOLVES AROUND THE INVOLVEMENT OF [ALLEGED CO–FELON] TO THE EXTENT THAT THE PROSECUTION INTRODUCED A HYPOTHETICAL SCENARIO WITH [ALLEGED CO–FELON] AS THE ACTUAL PRINCIPAL ACTOR IN THE BURGLARY–HOMICIDE, DID THE TRIAL COURT ERR IN REFUSING TO ALLOW THE APPELLANT TO INTRODUCE EVIDENCE THAT [ALLEGED CO–FELON] WAS NEVER ARRESTED IN VIOLATION OF THE APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 § 9 OF THE PENNSYLVANIA CONSTITUTION?

(Appellant's Brief at 3).

¶ 14 In his first issue on appeal, Appellant argues that the trial court erred when it refused to consider his second omnibus pre-trial suppression motion. Appellant contends that the trial court should have conducted a hearing on the matter to determine whether there were any changes in the law or the facts, which would have affected the trial court's rulings on the motion. We disagree.

¶ 15 The law of the case doctrine refers to a family of rules which embodies the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by a higher court in the earlier phases of the matter. *Commonwealth v. Starr*, 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995) (citing 21 C.J.S. Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744). The law of the case doctrine makes clear that upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by an appellate court in the matter. *Id.*; *Commonwealth v. Romberger*, 474 Pa. 190, 193–194, 378 A.2d 283, 284 (1977). Where an appellate court reverses a defendant's conviction and grants him a new trial, the defendant is not entitled to re-litigate the admissibility of evidence when the second suppression motion was based on the same issue and evidence raised in the first suppression motion. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799, 802 (1983). A second suppression hearing is only necessary where new evidence, previously unavailable, is presented for consideration. *Id.*

¶ 16 Instantly, Appellant admits in his brief that his second omnibus pre-trial suppression motion "raised various suppression issues which had been previously argued at his first trial and ruled upon by this Court in *Commonwealth v. McEnany*, 446 Pa.Super. 609, 667 A.2d 1143 (1995)." (Appellant's Brief at 17). Furthermore, Appellant failed to aver in his second suppression motion the discovery of new evidence, which was unavailable to him during his first trial. Moreover, Appellant's second suppression motion did not cite any changes in the law, which would have affected the resolution of the issues raised in the motion. Accordingly, we conclude that the trial court properly denied reconsideration of the issues presented in Appellant's second omnibus pre-trial suppression motion.

¶ 17 In his second issue on appeal, Appellant maintains that, upon remand, the trial court misapprehended this Court's appellate decision in *Commonwealth v. McEnany, supra*. Specifically,

Appellant argues that, at his second trial, the court allowed into evidence statements that this Court had held were inadmissible as an impermissible comment on Appellant's right to remain silent.

¶ 18 The trial court responded to Appellant's argument as follows:

> The decision of the Superior Court [on Appellant's direct appeal] granting a new trial has created a discrepancy over which statements and testimony the [Superior Court] found inadmissible at trial. When Corporal Freehling returned to the room to continue questioning [Appellant], he began to advise [Appellant] of his constitutional rights. [Appellant] interrupted him and stated that he wanted to do the right thing and he knew what the right thing was. He further stated that he wanted to tell what happened, but did not want to do anything stupid and wanted an attorney present when he made his statement.
>
> [Appellant] contends that the [S]uperior [C]ourt ruled the Commonwealth could not introduce any of the statements allowed by the trial judge. Specifically, [Appellant] argues that reference to [Appellant] wanting to do the right thing, knowing what the right thing was and not making a statement impermissibly commented on his right to remain silent. Whereas, the Commonwealth avers that the [S]uperior [C]ourt ruled that only the reference to [Appellant] not making a statement was inadmissible....

>  *  *  *

On appeal, the [S]uperior [C]ourt was presented with the [Appellant]'s claims that admission of his statements that he wanted to tell what happened and do the right thing, coupled with the testimony that he did not give a statement constituted an impermissible comment on his right to remain silent. [The Superior Court] began its analysis by focusing on the pretrial ruling of the judge. It noted that the judge permitted the Commonwealth to introduce [Appellant's] statements that he wanted to do the

right thing and he knew what the right thing was. It then recognized that the Commonwealth could not enter [Appellant's] statements indicating that he did not want to do anything stupid and would make a statement in the presence of his attorney. The [Superior] court then stressed:

> *Specifically, the trial judge ordered that "[t]he jury then should not be informed beyond the fact that subsequent thereto there was no statement made."* (T.T. p. 41, lines 15–20).

*McEnany*, 667 A.2d at 1150 (emphasis supplied).

The [Superior] [C]ourt went on [to] recite the exchange that took place at [Appellant's first] trial between the prosecutor and Corporal Freehling:

> [Freehling]: I again began to advise Mr. McEnany of his constitutional rights.
>
> [Prosecutor]: Right to remain silent and all that.
>
> [Freehling]: Yes, sir.
>
> [Prosecutor]: Did you get all the way through the rights before anything else was said.
>
> [Freehling]: No, sir.
>
> [Prosecutor]: Who said something in the middle of your reading the rights?
>
> [Freehling]: A[sic] partial way through it, my reading the rights again off the form to Mr. McEnany he stated he wanted to do the right thing and he knew what the right thing was.
>
> [Prosecutor]: Did you ever end up getting a statement from him?
>
> [Freehling]: No, sir, I did not.

N.T. 413, lines 4–19. *Id.* The [Superior] [C]ourt then discussed the law regarding reference to an accused's right to silence and concluded that it is reversible error to admit evidence of a defendant's silence at the time of his arrest. *Id....*

The [Superior] [C]ourt concluded that the Commonwealth presented direct evidence of [Appellant's] post-arrest silence during the questioning of Corporal Freehling. It mentioned that [Appellant] stated he wanted to do the right thing and focused on the Commonwealth's question immediately thereafter. *"Did you ever end up getting a statement from him?, the officer replied, No." Id.* (emphasis supplied). The court then reasoned that:

> By offering *such evidence,* the Commonwealth expressly informed the jurors that [Appellant] exercised his right to remain silent. We are convinced that this was an improper reference to [Appellant's] exercise of his constitutional privilege from which the jury might infer an admission of guilt. *Commonwealth v. Hyneman,* [424 Pa.Super. 415, 622 A.2d 988 (1993)]. Consequently, [Appellant] must be afforded a new trial which is free from the taint of impermissible comment upon his right to remain silent. *Id.* (emphasis added).

We find that the evidence to which the [Superior] [C]ourt is referring is solely the testimony regarding whether [Appellant] gave a statement. The introduction of only that evidence constituted an impermissible comment upon [Appellant's] right to remain silent. The pretrial ruling admitting the statements given prior to that evidence was not overturned by the [S]uperior [C]ourt. This is evident after reading footnote No. 5 [in the Superior Court's opinion], which states:

> Defense counsel did not object to this testimony at trial as it would have been futile. *The prosecution was proceeding according to the trial judge's erroneous pretrial ruling.* It is difficult to imagine a more direct comment on one's right to silence than the officer's testimony that no statement was made by [Appellant]. Furthermore, there was no probative value to this evidence beyond the fact that [Appellant] asserted his right to silence.

There was no need for the prosecution to draw attention to the absence of a statement by [Appellant] and it was improper for the trial judge to sanction such conduct.

*Id.* (emphasis added). [Appellant] contends that when the [Superior] [C]ourt mentions the "erroneous pretrial ruling," it is referring to the judge's decision to allow any of [Appellant's] statements. We are not persuaded by such argument. The contents of the footnote cannot be considered in a vacuum. The court put forth the effort to include a lengthy footnote and it must be viewed in its entirety. Nowhere does the court refer to any of the statements which were made by the defendant and admitted by the trial judge. The discussion focuses only on the testimony that [Appellant] did not make a statement. We believe that the "erroneous pretrial ruling" to which the court was referring was the trial judge's decision to allow the Commonwealth to inform the jury that [Appellant] did not make a statement.

(Trial Court Opinion, dated 7/21/97, at 7–11). In accord with the well-reasoned analysis of the trial court, we conclude that Appellant's second issue is without merit.

¶ 19 In his third issue on appeal, Appellant argues that the trial court erred when it permitted the Commonwealth to impeach him with his 1986 conviction for receiving stolen property. Specifically, Appellant contends that his conviction was more than ten years old on the date of his second trial. He concludes, therefore, that the prior conviction was inadmissible to impeach his credibility at his second trial. We disagree.

¶ 20 The admissibility of evidence of prior convictions for the purpose of impeaching a defendant/witness is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Commonwealth v. Bailey,* 354 Pa.Super. 51, 511 A.2d 180 (1986) (citing *Commonwealth v. Roots,* 482 Pa. 33, 393

A.2d 364 (1978); *Commonwealth v. Kearse*, 326 Pa.Super. 1, 473 A.2d 577 (1984)). "Evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date." *Commonwealth v. Randall*, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987); *see also Commonwealth v. Jackson*, 526 Pa. 294, 296, 585 A.2d 1001, 1001–1002 (1991). If the prior conviction involves an offense involving dishonesty or false statement, and the date of conviction or last day of confinement is within ten years of the trial date, then the conviction is *per se* admissible to impeach a defendant's credibility. *Russell v. Hubicz*, 425 Pa.Super. 120, 624 A.2d 175, 182 (1993), *appeal denied*, 535 Pa. 670, 634 A.2d 1117 (1993) (citing *Randall, supra* ). Our Supreme Court in *Jackson* explained as follows:

> [a] salient feature of the *Randall* rule and the federal rule on which it is based is that a prior conviction for an offense involving dishonesty may be used to discredit a witness for ten years following the conviction *or the last day of confinement for that offense*. It would not have seemed unreasonable if the rule, alternatively, had maintained the impediment only for ten years from the date of the offense, based on reasoning that the dishonest act, the offense itself, is presumed to be relevant as to credibility for only ten years. But instead, the rule establishes an impediment which extends for ten years from the last day of confinement for the offense. The relevancy of the dishonest act is expiated only by the passage of ten uninterrupted years of *freedom;* the time spent in confinement for the offense does not count in the passage of the ten-year impeachment period. The necessary implication is that time spent in confinement, without normal opportunity to commit additional criminal offenses, does not demonstrate rehabilitation. That being the case, a recent confinement for an old conviction, due to a parole violation, interrupts the ten-year period because the witness has not demonstrably mended his mendacity for the requisite ten years.

*Jackson, supra* at 298, 585 A.2d at 1003 (emphasis in original).

■■ ¶ 21 Here, Appellant pled guilty to receiving stolen property on April 25, 1986.[1] He was not incarcerated on that conviction. In 1993, Appellant was convicted in the instant case of second-degree murder, robbery, burglary, and criminal conspiracy. On October 19, 1993, Appellant was incarcerated following these convictions. Appellant remained incarcerated for two years while his appeal regarding the 1993 convictions was pending before this Court. On November 8, 1995, this Court reversed Appellant's judgment of sentence and remanded the case for a new trial, due to an erroneous evidentiary ruling. Between the time of remand and the time of his second trial, ten years technically expired from the date of his 1986 conviction. In fact, Appellant's second trial commenced on September 10, 1997, approximately eleven years and four months after his 1986 conviction.

¶ 22 Nevertheless, the policy reasons set forth in *Jackson* for tolling the ten-year period apply equally to the facts of this case. The two years Appellant spent in prison following his 1993 convictions do not in any way demonstrate Appellant's rehabilitation. *See Jackson, supra*. To the contrary, Appellant's confinement took away his freedom and the normal opportunity to commit additional criminal offenses. His confinement interrupted the ten-year impeachment period necessary to expiate the relevancy of his 1986 conviction.

1. Receiving stolen property is recognized as a crime involving dishonesty for which a defendant can be impeached. *See Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323 (1988), *appeal denied*, 522 Pa. 601, 562 A.2d 824 (1989).

¶ 23 Appellant was in prison because a jury found him guilty of, among other offenses, robbery and burglary, which Pennsylvania law recognizes as crimes involving dishonesty. *See Commonwealth v. Strong*, 522 Pa. 445, 563 A.2d 479 (1989) (holding Commonwealth may use robbery conviction to impeach defendant's credibility because robbery involves element of dishonesty); *Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987) (holding convictions for robbery and burglary reflected on defendant's veracity and are admissible to impeach his testimony). Thus, the time Appellant spent in prison following his 1993 conviction should not count toward the passage of the ten-year period during which Appellant's 1986 conviction is *per se* admissible to impeach his credibility. *See Russell, supra*; *Randall, supra.* Appellant should not reap the benefit of precluding, at his retrial, evidence that was unquestionably admissible in his first trial, simply because he took an appeal. Due to his incarceration, Appellant has not demonstrated ten uninterrupted years of rehabilitation for the purposes of this evidentiary rule. We hold therefore that the two years Appellant spent in prison while his appeal was pending in this Court do not count toward the passage of the ten-year impeachment period. As the date of Appellant's second trial, September 11, 1997, was within the adjusted ten years of his 1986 conviction, it was *per se* admissible to impeach Appellant's credibility at his trial on remand. *See Jackson, supra; Randall, supra; Hubicz, supra.*

¶ 24 Alternatively, where a period greater than ten years has expired by the date of trial, a prior *crimen falsi* conviction may still be admitted, if the value of the evidence substantially outweighs its prejudicial effect. *Jackson, supra*; *Randall, supra.* In making this determination, the following factors are relevant:

(1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would

have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility.

*Jackson, supra* at 296, 585 A.2d at 1002 (quoting *Roots, supra* at 39–40, 393 A.2d at 367); *Randall, supra.*

¶ 25 In the instant case, Appellant's conviction for receiving stolen property no doubt reflects upon his veracity. *See Ellis, supra.* Additionally admission of Appellant's prior conviction would not have an overwhelming tendency to smear his character or suggest a propensity to commit the serious felonies for which Appellant was charged in this case. *See Jackson, supra.* Furthermore, the prosecution's case was based on circumstantial evidence. The Commonwealth had no direct evidence or eyewitness testimony to establish Appellant's guilt. Thus, the impeachment evidence was essential in this case. *See id.* Moreover, Appellant presented an alibi defense and testified that he was at a bar at the time of the murder. Appellant offered the testimony of several witnesses who stated that they saw Appellant at the bar on the night of the murder. Thus, Appellant's credibility was a critical issue. Considering the importance of Appellant's credibility and the limited prejudice of a single misdemeanor conviction, we conclude that the probative value of the 1986 conviction substantially outweighed any potential prejudicial effect. Thus, evidence of that conviction was admissible to impeach Appellant's credibility, even if the ten-year time period for *per se* admissibili-

ty had expired. *See id.*; *Randall, supra.* Accordingly, we conclude that the trial court properly permitted the Commonwealth to impeach Appellant's credibility with his 1986 conviction for receiving stolen property.[2]

¶ 26 In his fourth issue on appeal, Appellant contends that certain computer-generated cellular phone record printouts were improperly admitted at trial. Appellant maintains that these phone record printouts, which purportedly established that Appellant called Ms. Bishop on the night of the murder, are hearsay and do not fall under any recognized exception to the hearsay rule. Appellant therefore complains that the admission of the phone records into evidence constitutes reversible error. We cannot agree.

¶ 27 Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted therein. *Commonwealth v. Pearson*, 454 Pa.Super. 313, 685 A.2d 551, 555 (1996), *appeal denied*, 549 Pa. 699, 700 A.2d 439 (1997) (citing *Commonwealth v. Smith*, 436 Pa.Super. 277, 647 A.2d 907, 911 (1994)). Hearsay is generally inadmissible at trial unless it falls into an exception to the hearsay rule. *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842, 844 (1996) (citing *Smith, supra* ).

¶ 28 The Uniform Business Records as Evidence Act, codified at 42 Pa.C.S.A. § 6108, provides in pertinent part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108. This Court has stated that:

[t]he purpose of the Uniform Business Records as Evidence Act is to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition or an event was made in the regular course of business, at or near the time of the act, condition or event and where the sources of information, method and time of preparation were such as to justify its admission. *Joseph v. Krull Wholesale Drug Co.*, 147 F.Supp. 250 (E.D.Pa.1956), affirmed, 245 F.2d 231 (3d Cir.1957). The question of whether documents should be admitted under the "business records" exception to the hearsay rule is within the discretionary power of the trial court provided such discretion is exercised within the Uniform Business Records as Evidence Act. *Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982). It is not essential under the Uniform Business Records as Evidence Act to produce either the person who made the entries or the custodian of the record at the time the entries were made. *In re Indyk's Estate*, 488 Pa. 567, 573, 413 A.2d 371, 373 (1979). Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts reported in the business record. *Wayne County Bd. of Assessment v. Federation of Jewish Philanthropies*, 43 Pa.Cmwlth. 508, 403 A.2d 613 (1979). As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. *In re Indyk's Estate, supra*, at 573, 413 A.2d at 373.

*Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1032–1033 (1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994).

---

2. We note that Appellant has not raised nor do we address any issue pursuant to 42 Pa.

C.S.A. § 5918 (prohibiting direct questioning of a defendant witness about prior crimes).

¶ 29 Instantly, the Commonwealth established that Cellular One's computer systematically and contemporaneously creates a record of every telephone call made on its system, regardless of whether the phone call is ultimately answered. These records are maintained on binary files within Cellular One's computer system, which are generated at the moment a telephone call is made.[3] Cellular One keeps these records to resolve billing disputes between Cellular One and its customers. Thus, the records were made in the regular course of Cellular One's business at or near the time the telephone calls were made. Moreover, the designer of Cellular One's computer program testified to the accuracy of the translation of this information from its computer's language into English. Hence, we are satisfied that the Commonwealth presented sufficient information to justify a presumption of the trustworthiness of Cellular One's records so as to offset the hearsay character of the evidence. Accordingly, we conclude, the trial court properly exercised its discretionary power, within the Uniform Business Records Act, regarding the admission of the phone records.

¶ 30 In his final issue on appeal, Appellant contends that the trial court erred when it limited his ability to cross-examine Corporal Freehling. Specifically, Appellant argues that the trial court should have permitted him to ask Corporal Freehling whether Appellant's alleged co-felon had ever been charged with any crimes involving Ms. Bishop's murder. Appellant claims that this testimony was relevant to cast doubt on the hypothetical scenario Corporal Freehling posed to Appellant with his alleged co-felon as the principal actor. We disagree.

¶ 31 To be admissible, evidence must be relevant. *Commonwealth v. Ellis*, 700 A.2d 948, 956 (Pa.Super.1997); *Commonwealth v. King*, 456 Pa.Super. 72, 689 A.2d 918, 922 (1997). Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding existence of a material fact. *Commonwealth v. LaCava*, 542 Pa. 160, 174, 666 A.2d 221, 227–228 (1995) (citing *Commonwealth v. Spiewak*, 533 Pa. 1, 8, 617 A.2d 696, 699 (1992)).

¶ 32 Section 306 of the Pennsylvania Crimes Code provides in pertinent part:

**§ 306. Liability for conduct of another; complicity**

**(g) Prosecution of accomplice only.** – An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S.A. § 306(g). Applying this statute, this Court has held that evidence of an alleged co-felon's acquittal is irrelevant and, therefore, inadmissible to prove a defendant's innocence. *Commonwealth v.*

---

3. Appellant argues that Cellular One's records are not within the business records exception to the hearsay rule because they were translated from the computer's language into English in preparation of the trial of this case. We cannot agree. The fact that the records had to be translated into English before their use at trial does not negate the fact that the records were created in the regular course of Cellular One's business at the moment the telephone calls were made. Hence, the records themselves were not prepared for the trial of this case. If we were to accept Appellant's narrow interpretation of the business records exception to the hearsay rule, then otherwise trustworthy evidence would be excluded simply because it needed to be translated so as to be understandable by the finder of fact. This result is in direct contravention of the purpose of the business records exception to the hearsay rule; i.e., to permit the admission of records made in the regular course of business where the sources of information, method and time of preparation are such as to justify its admission. *See Boyle, supra.*

*Dennis*, 313 Pa.Super. 415, 460 A.2d 255 (1983). The Court reasoned as follows:

> It is clear that under Pennsylvania law [a]n accomplice may be convicted on proof of the commission of the offense and his complicity therein, though the person claimed to have committed the offense ... has been acquitted.

18 Pa.C.S.A. § 306(g). *See Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977) (previous acquittal of principal not a bar to prosecution of accomplice for same killing).

\* \* \*

In *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980), our Supreme Court held that the subsequent acquittal of all alleged co-conspirators did not preclude upholding the defendant's conspiracy conviction. In that case, the court noted that

> An acquittal at any trial is never a guarantee that no crime has been committed. Rather it signifies only that the Commonwealth has not proved its case to the satisfaction of the jury. Thus, in the present case, different verdicts may well have been due to a variety of other circumstances, including a difference in proof offered at trial.

*Byrd, supra* at 552, 417 A.2d at 177.

We are, of course, mindful that when there is Commonwealth evidence which tends to show that a defense witness is an accomplice, the defense may introduce evidence of the witness's acquittal, for the limited purpose of restoring the value of the defense witness's testimony. *Commonwealth v. Meredith*, 493 Pa. 1, 425 A.2d 334 (1981) (per Roberts, J. with two Justices concurring and one Justice concurring in the result). No such limited use was sought in this case, however. Rather, it is clear that evidence of [defendant's alleged co-felon's] acquittal was offered generally, as proof of appellant's innocence, and thus was properly excluded as irrelevant. (citations omitted).

*Dennis, supra* at 257–258.

■ ¶ 33 Instantly, the Commonwealth's decision not to charge and prosecute Appellant's alleged co-felon is no more a guarantee that a crime has not been committed than the acquittal of an alleged co-felon. Such evidence merely signifies that for one reason or another, the prosecution has exercised its discretion and decided not to proceed against the alleged co-felon. Further, Appellant's alleged co-felon did not testify at trial. Thus, Appellant was not trying to use this evidence for the limited purpose of restoring the value of the alleged co-felon's testimony. Pursuant to the rationale set forth in *Dennis, supra*, we hold, the fact that Appellant's alleged co-felon was not charged was irrelevant if offered to prove Appellant's innocence. Accordingly, the trial court properly precluded Appellant's attempt to show that his alleged co-felon was not charged with any crime surrounding the murder of Ms. Bishop.

¶ 34 Based upon the foregoing analysis, we affirm the judgment of sentence.

¶ 35 Judgment of sentence affirmed.