Smakosz *v.* Beaver Falls (et al., Appellants).

116

Argued November 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Irwin M. Ringold,* with him *Alexander J. Jaffurs* and *Samuel C. Holland,* for appellants.

*Alvin D. Capozzi,* Associate Counsel, with him *Thomas E. Roberts,* Chief Counsel, *Raymond Kleiman,* Deputy Attorney General, and *Edward Friedman,* Attorney General, for appellees.

OPINION BY MONTGOMERY, J., December 16, 1966:

In this workmen's compensation case claimant Adam Smakosz filed claim petitions against the City of Beaver Falls and Geneva College, seeking to determine which organization was his employer and the amount of compensation payable for injuries sustained while engaged in directing traffic at an intersection in that city. The referee found the city to be the employer but was reversed by the Workmen's Compensation Board, which found his employer to be Geneva College. From this determination an appeal was taken to the Common Pleas Court of Beaver County, which court sustained the board. This appeal by Geneva College and its insurance carrier followed.

Claimant Smakosz was regularly employed by the City of Beaver Falls as a police officer. Geneva College, an educational institution located within the limits of said city, had need for the services of men experienced in police work to patrol its campus. By an arrangement with the Chief of Police of the city, but without official authorization from the mayor or city council, it secured the services of "off-duty" police officers to act as a campus patrol. The Chief of Police regularly designated for this patrol men who were willing to serve and volunteered. Geneva College, at intervals, sent a remittance to the Chief of Police at the rate of two dollars per hour for the number of hours the men worked and the Chief made a proper distribution of the money to the individual officers. In a directive to the Chief of Police Geneva College prescribed the number of men, the shifts, the uniforms, and the patrol routes. Included in the directive were

their duties and the manner in which they were to be performed, the reports and remuneration. Under special duties the policemen were directed to give attention to improperly parked cars on various parking lots and driveways on the college campus, and two particular off-campus areas "back of McKee Hall, around Clarke Hall . . . , and the parking at Miss Brandon's row of garages just beyond upper play area. This is not College property, but the garages are predominantly used by College people and we do not want improper use of the facilities."

On March 4, 1963, the college issued a special directive to the Chief of Police, the subject of which was the "Policing of Geneva College Fieldhouse for N.A.I.A. Basketball Playoffs" (in which participation included five other colleges but not Geneva) for the evenings of March 6 and 7, 1963. It emphasized that it was of utmost importance that the whole program be well patrolled so that no unauthorized entries be made, gate crashing efforts at such events being common. It also stated that the objective was to be accomplished by "Three regular policemen plus the campus *patrolman* and three or more from Civil Defense . . ." (Emphasis supplied) At no time was there ever more than one campus patrolman on duty.

On the evening of March 7, claimant was on duty as the assigned campus patrolman for the 5:00 p.m. to 11:00 p.m. shift. It had been his practice during the two years he had served as campus officer to assist in directing traffic on the public street in the vicinity of the field house following the completion of athletic events therein. This would occupy him for about one-half hour. Early in the evening of March 7, he was instructed by Sergeant Gorrell, who was under Chief Martin E. Breit, not to forget the traffic after the game at 9:00 to 9:15 p.m. It was while he was direct-

ing traffic on the public street following the game that he was struck by a car and injured.

At other times, following football games, the college requested additional policemen to handle traffic flowing from the football field, and their request of March 4 referred to before, also indicated a desire for three regular policemen for handling traffic. On each of such occasions off-duty policemen were assigned and were paid by Geneva College. On the evening of March 7, the college paid Chief Breit in cash for the services of the three regular policemen and the special Civil Defense officers who had also been requested in the letter of March 4; and the Chief distributed the money to all of these men.

We have no difficulty in concluding that during the time claimant was performing his duties on the campus of the college he was in its employment and not in that of the City of Beaver Falls. The directive issued by the college not only established the duties but determined the manner in which they were to be performed. The element of control or power to control the employe was thus retained by the college and is the crucial or vital consideration. *Wall v. Penn Lumber & Mill Works,* 171 Pa. Superior Ct. 512, 90 A. 2d 273 (1952); *Gocs v. Coale's Distributing Lumber Co.,* 142 Pa. Superior Ct. 479, 16 A. 2d 720 (1940).

Insofar as claimant's status at the time of the accident is concerned, when he was off-campus and on a public street, there is sufficient evidence to support the finding made by the Workmen's Compensation Board and affirmed by the lower court, that he was then still under the control of and engaged in the furtherance of the affairs of the college. The college was responsible for the congestion of traffic flowing from its campus and it was to its advantage to have it dissipated as soon as possible. It would not be

unusual or unreasonable for it to use its own employes to aid its visitors in their efforts to leave, in the absence of or in cooperation with regular police or traffic officers. We find nothing in the record to indicate that the regular police directed claimant's actions on this occasion, although they would have had the authority to direct or order him to cease his efforts if they constituted an interference with their activities or were contrary to good traffic control. However, the exercise of such authority would not have made this claimant the employe of the city. Furthermore, the college was aware that its campus officers regularly aided in directing traffic flowing from its athletic events and that they went off the campus to otherwise protect its interests. If it had desired to limit the activities of these patrolmen to the campus it could have easily done so, and failing to do so cannot now successfully contend that their activities during their regular hours of employment by it were on behalf of the city. We conclude that at the time of claimant's accident he was an employe of Geneva College and not the City of Beaver Falls.

Order affirmed.