Northern Central Bank and Trust Company and United States Fidelity and Guarantee Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Kontz), Respondents.

Argued January 31, 1985, before Judges MacPhail, Barry and Palladino, sitting as a panel of three.

Ronald C. Travis, Murphy, Mussina, Harris, Travis, Rieders & Humphrey, for petitioners.

Peter J. Campana, with him, Ambrose R. Campana, Campana & Campana, for respondents.

Opinion by Judge MacPhail, March 20, 1985:

Northern Central Bank and Trust Company (Petitioner) appeals here from a decision of the Workmen's Compensation Appeal Board (Board) affirming the referee's award of benefits to Raymond O. Kontz (Claimant).[1]

The issues presently before us are 1) whether Claimant was an employee of Petitioner at the time he suffered his injury and 2) assuming that Claimant was an employee of Petitioner, whether he was a casual employee.[2]

---

[1] The Board also remanded the matter to the referee for such proceedings as are necessary to determine the credit or subrogation, if any, to which Petitioner is entitled.

[2] Petitioner raised an additional issue in his petition for review which was neither briefed nor argued; therefore, we shall not consider whether the Board erred in applying the "concurrent contract" formula to determine the amount of Claimant's compensation. See Pa. R.A.P. 2116(a).

A claimant seeking Workmen's Compensation benefits has the burden of proving that an employment relationship exists. *Wingert & Brechbill v. Workmen's Compensation Appeal Board,* 44 Pa. Commonwealth Ct. 55, 402 A.2d 1157 (1979).[3]

The term "employe" is defined in Section 104 of The Pennsylvania Workmen's Compensation Act (Act),[4] which states in pertinent part that the term includes "[a]ll natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer . . . ." The existence of an employer-employee relationship is a question of law which must be determined on the basis of the facts of the individual case. *North Penn Transfer, Inc. v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 469, 434 A.2d 228 (1981). Various indicia have been set forth to use as guides in making the determination whether an employer-employee relationship exists. *See J. Miller Co. v. Mixter,* 2 Pa. Commonwealth Ct. 229, 232, 277 A.2d 867, 869 (1971). "[T]he key element is whether the alleged employer had the *right* to control the work to be done and the manner in which the work is performed." *North Penn Transfer, Inc.,* 61 Pa. Commonwealth Ct. at 472, 434 A.2d at 229 (emphasis added). Further, it is the existence of the *right* to control which is critical irrespective of whether the

---

[3] The party with the burden of proof having prevailed before the Board, our scope of review is limited to a determination of whether there is substantial evidence to support the referee's findings of fact and whether there has been an error of law or violation of constitutional rights. *Burns International Security Services, Inc. v. Workmen's Compensation Appeal Board,* 79 Pa. Commonwealth Ct. 340, 469 A.2d 336 (1984). No violations of constitutional rights have been alleged in the instant case nor have we found any.

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §22.

control is *exercised*. *Mature v. Angelo*, 373 Pa. 593, 596, 97 A.2d 59, 60 (1953).

The referee found as fact[5] that Claimant occasionally directed traffic to assist customers using Petitioner's drive-in window, substituting on an infrequent basis for the person who usually performed this job. He worked approximately twenty-five hours in 1978. The record shows without contradiction, that these duties were performed only on Fridays. Claimant and the person for whom he substituted were both policemen.[6] Claimant provided the clothing which he wore while directing traffic at Petitioner's bank. Petitioner paid Claimant $5.00 per hour and no deductions were taken from Claimant's pay.

Claimant testified that one of Petitioner's employees, a bank official, would occasionally point out cars that had been parked in Petitioner's lot for a long time so that Claimant could advise the drivers that the lot was not for public parking. Petitioner's witness testified that there was no control exerted over the manner in which traffic was directed and that no instruction or equipment was provided. Claimant was injured on December 8, 1978, while directing traffic.

In his discussion the referee noted that Claimant's normal police duties meant that he needed little supervision and knew the duties of his job. Petitioner determined the property for which Claimant was to direct traffic and when the services were needed; *i.e.*, on Fridays when drive-in business was greatest. The referee's decision that the evidence established that

[5] Our review of the record shows that the relevant findings of fact are supported by substantial evidence.

[6] Although the referee made no specific finding in this regard, the uncontradicted evidence was that Claimant directed traffic at Petitioner's bank on his day off from his regular employment as a policeman.

Claimant was under Petitioner's direct control is supported by substantial evidence. Claimant testified in pertinent part as follows:

Q. Did you receive supervision from anybody at the Northern Central Bank [Petitioner here]?

A. Yes. I talked to him several times.

Q. What was the name of your supervisor?

A. Meril Johnson [sic].

Q. Is Mr. Johnson [sic] employed by the Northern Central Bank?

A. Yes.

Q. What supervision did he give you?

A. If there are any cars sitting on the lot for a good length of time and we didn't notice them he would say, "Watch this car and see where he comes from." We would advise them not to use the lot for a parking lot. A lot of people would come and run across the street to the cafe and we would have to tell them that this parking was for bank business only.

Q. You were required to police the parking lot that was owned by the Northern Central Bank?

A. Or any cars that would sit there for any length of time we would see where the person came from and we would tell him that it was for bank business only.

Q. Did somebody in the Northern Central Bank call your attention to the cars that appeared to be in violation?

A. Mr. Johnson [sic] did.

Q. Besides moving the drive-in window traffic onto the public street, did the Northern Central Bank instruct you as to how you were to carry these duties out?

A. They figured what to do, how to get them out or make sure that they wouldn't back up. We had to keep the traffic moving.

N.T. (6-4-81) at 7-8.

In *Smakosz v. City of Beaver Falls,* 209 Pa. Superior Ct. 115, 224 A.2d 785 (1966), an action brought under the Act prior to the establishment of this Court, the claimant was found to be an employee of Geneva College while directing traffic in the capacity of a campus patrolman after a college-sponsored athletic event. As in the instant case, the claimant was an off-duty policeman.[7] Although in *Smakosz* Geneva College provided more direct supervision, we find this distinction not to be determinative.[8] As we have previously noted, it is the *right* to control and not the exercise of that right which determines the issue which we now have before us. In the instant case Petitioner needed only one person to direct traffic one day a week at a single location. There was little need for actual control and supervision, and Petitioner exerted the amount of control which was necessary. The duties were simple and the person performing them was experienced. We find, therefore, that the Board committed no error of law in determining that Claimant

---

[7] The primary issue in *Smakosz* was whether the city of Beaver Falls or Geneva College was the employer.

[8] We do not find that this case is controlled by *City of Monessen v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 226, 387 A.2d 1000 (1978). The question in *City of Monessen* was whether the claimant was an employee of the city or the school district. The Claimant, a policeman, was directing traffic for a school athletic event. He wore his police uniform and used police equipment. The duty roster was posted in the police station and more than one-half of the police force was working at the event at the time. Under these facts, this Court found that the claimant was an employee of the City. These facts are sufficiently different to distinguish the result from the case *sub judice.*

was an employee of Petitioner at the time he was injured.[9]

Because Claimant was an employee of Petitioner, he may be eligible for compensation under the Act unless his employment was "casual in character *and* not in the regular course of the business" of Petitioner. Section 104 of the Act (emphasis added). Although we are asked here to determine whether Claimant was a casual employee, Petitioner's argument focuses upon whether Claimant's activities were in the regular course of Petitioner's business. We hold that they were.

The record shows that Petitioner is a banking institution which regularly provides drive-in window service to its customers. Part of that service is the provision of a person to direct traffic on Fridays to facilitate the use of the drive-in window. " 'The legislature evidently intended, by the use of the words "regular course," to give them some definite significance and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question . . . .' " *Industrial Valley Bank & Trust Co. v. Workmen's Compensation Appeal Board*, 16 Pa. Commonwealth Ct. 420, 424, 332 A.2d 882, 884 (1975) (quoting *Callihan v. Montgomery*, 272 Pa. 56, 72, 115 A. 889, 895 (1922)). Where drive-in window services are regularly offered by a bank, and traffic control for the drive-in window is provided as an ongoing service on the same day each week, such traffic control is in the regular course of the bank's business. Claimant therefore was Petitioner's employee as defined in Section 104 of the Act.

---

[9] *See also Reasner v. Workmen's Compensation Appeal Board*, 36 Pa. Commonwealth Ct. 292, 387 A.2d 679 (1978) (discussion of elements of master-servant relationship).

Having found no errors by the Board, we will affirm.

ORDER

The order of the Workmen's Compensation Board of Appeal No. A-84470 dated June 14, 1984, is hereby affirmed. This matter is remanded to the Board for implementation of that order. Jurisdiction relinquished.

Judge WILLIAMS, JR., did not participate in the decision in this case.