SCHNEIDER NATIONAL CARRIERS, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (BEARDON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 1999.

Decided Sept. 14, 1999.

Gretchen J. Fitzer, Pittsburgh, for petitioner.

Eric P. Betzner, Washington, for respondent.

Before FRIEDMAN, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Schneider National Carriers (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (WCAB) affirming a Workers' Compensation Judge's (WCJ) decision to award William Beardon (Claimant) workers' compensation benefits on the ground that he was an employee, not an independent contractor. We also affirm.

On December 6, 1989, Claimant, a truck driver hired by Employer, suffered injuries to his neck, shoulders and low back when the truck he was driving was involved in an accident. (WCJ's Findings of Fact, No. 30.) Seeking benefits for his injury, Claimant filed a claim petition alleging that he was injured while in the course and scope of his employment with Employer. (WCJ's Findings of Fact, No. 1.) Employer answered the claim petition by denying that Claimant was its employee, instead asserting that Claimant was an independent contractor and, thus, not entitled to benefits.[1] (WCJ's Findings of Fact, No. 2.)

A hearing was held before the WCJ, who made the following findings of fact on the issue of whether Claimant was an employee of Employer or an independent contractor:

5. On November 20, 1984, [Claimant] executed an Installment Sales Contract and Security Agreement with [Employer] for the purchase of the International Harvester Tractor which was involved in the subject accident. A Certificate of Title and Certificate of Origin indicates that [Employer] was the second lienholder. The Installment Sales Contract and Security Agreement provides that in the event of any default, in the event that [Claimant] fails to enter into the Independent Contractor Operating Agreement, or if the Independent Contractor Operating Agreement was terminated for any reason, [Employer] was entitled to possession and control of the tractor. The Installment Sales Contract and Security Agreement includes warranties of purchaser, including a warranty that [Claimant] would only use the tractor for business purposes and would not use the tractor for agricultural, personal, family or household purposes.

6. On June 1, 1987, [Claimant] executed an Independent Contractor Operat-

---

1. Employer also denied that Claimant was injured and disabled as a result of the acci-  dent. (WCJ's Findings of Fact, No. 2.)

ing Agreement with the defendant. The Agreement provides that [Claimant] would be responsible for the payment of operating costs, including the cost of fuel, fuel taxes, tolls, apportioned base plates, equipment maintenance and repairs, road access, mileage taxes, fines and other levies or assessments. The Agreement further provides that [Claimant] must maintain in force at all times proper workers' compensation insurance coverage. The Agreement provides that [Employer] was entitled to deduct a reasonable amount each month for workers' compensation insurance from [Claimant's] pay unless [Claimant] furnished a current Certificate of Coverage to [Employer]. This deduction would be itemized under each settlement sheet to [Claimant]. The Agreement further provides that all equipment identification would be provided by [Employer] and shall remain the property of [Employer]. The Agreement also provides that [Employer] could terminate the lease immediately for reasons including but not limited to the failure to comply with all laws and regulations governing performance, failure to maintain insurance required, failure to exercise all diligent efforts to conduct operations to assure continued customer satisfaction, and failure to provide notice required before electing to go out of service and failure to perform any other duty required under the Agreement. The Agreement could also be terminated by [Employer] at any time after 30 days from the date the Agreement was executed in the event of a material breach or by written notice. The Agreement further provides that [Claimant] could take himself out of service prior to dispatch provided that he notify [Employer] in advance of his intention to elect out of service status at the time of his immediately preceding dispatch. The Agreement further provides that ... the failure of [Claimant] to accept a load absent the notice required shall be ground for termination of the Agree-ment. The Agreement also provides that [Employer] would be sole judge of the condition of [Employer's] equipment and/or other property. The Agreement further provides that [Employer] may require equipment to be inspected at [C]laimant's cost at facilities that [Employer] has approved. The Agreement further provides that [Employer] could require [Claimant], at his cost, to undergo physical examinations and/or to be drug tested at facilities and using such methods as [Employer] shall have approved.

7. Although the Independent Contractor Operating Agreement provides that [Claimant] was required to have workers' compensation insurance coverage, [Employer's witness] testified that on or about August 1, 1989, she sent a letter to the drivers under the Independent Contractor Operating Agreement who were not residents of the State of Indiana which stated that [Employer] would accept an occupational accident program offered by The National Association of Independent Truckers in lieu of workers' compensation. The letter further provides that [Employer] took the liberty of enrolling the drivers in the NAIT program and would make deductions from the drivers' pay. Although [Claimant] signed a membership application for the NAIT program, he stated that he did not receive the application until after the subject accident. The Settlement Statement dated September 22, 1989 indicates that [Employer] commenced making monthly deductions from the Claimant's payouts for the NAIT insurance program in September, 1989.

8. [Claimant] was required to attend an orientation program by [Employer].

9. [Employer] inspected the tractor periodically for safety.

10. [Employer] had the right to accept or reject substitute drivers proposed by the drivers who signed the Independent Contractor Operating Agreement.

11. [Employer] could terminate the Independent Contractor Operating Agreement if the tractor was not in satisfactory condition or [was] not operated to its satisfaction. Additionally, [Employer] could terminate the Agreement without cause provided written notice was given.

12. Although [Employer] did not specify the route to be taken, [Employer] told [Claimant] the destination and time of arrival. [Claimant] was paid on a mileage basis which was based upon the Household Good Carriers Mileage Guide.[2] [Claimant] was paid on a weekly basis.

13. Both the tractor and trailer operated by [Claimant] had [Employer's] name an[d] ICC number attached.

14. [Claimant] was not permitted to operate or permit operation of the equipment for any purpose other than pursuant to the terms of the Independent Contractor Operating Agreement and the Installment Sales Contract and Security Agreement.

15. [Claimant] was required to submit logs after each trip as set forth on page two paragraph three of the Independent Contractor Operating Agreement.

16. A fuel card was provided to [Claimant] in [Employer's] name, and [Employer] would later deduct the amounts charged from the payments to [Claimant]. [Claimant] was only permitted to obtain fuel from locations designated by [Employer].

17. [Claimant] was required to contact the dispatcher every morning.

18. [Claimant] did not sublease the tractor to another carrier.

19. [Claimant] obtained physical examinations conducted by physicians designated by [Employer].

20. [Employer] would pay for lumpers on occasion who would assist [Claimant] to help load and unload.

21. [Claimant] received Safety Award Bonuses from [Employer].

22. [Employer] had paid for [Claimant's] base plates.

23. [Claimant] was instructed by [Employer] as to what procedures to follow after a vehicular accident.

24. Although [Employer's witnesses] testified that differences existed between company drivers and drivers who executed the Independent Contractor Operating Agreement, the testimony indicated that both groups of drivers were paid on a mileage basis, were required to [contact] the dispatcher every day, were paid for out of route mileage in certain circumstances, and were not required to take specified routes.

In his decision, the WCJ also made credibility findings. Despite Employer's attempt to impeach Claimant's credibility by means of a burglary conviction, the WCJ specifically found Claimant's testimony credible, and the WCJ stated that he relied upon Claimant's testimony in making findings of fact.[3] (WCJ's Findings of Fact, Nos. 3, 35.) The WCJ rejected the testimony of Employer's two witnesses, Patricia M. Cauwenbergh and Mark W. Wagner, as not credible where it conflicted

---

2. The WCJ found that Claimant's payment was based upon the shortest route available. (WCJ's Findings of Fact, No. 34.)

3. Claimant's burglary conviction occurred on May 21, 1993, (R.R. 590a), prior to the completion of Claimant's hearing testimony. With respect to the conviction, the WCJ stated:

> Defendant's counsel has attempted to impeach [Claimant's] testimony by use of a subsequent conviction. However, the law in Pennsylvania only permits impeachment

of credibility by a prior conviction. It is extremely unfortunate that [Claimant] was involved in this activity which occurred subsequent to his date of injury, and there is no justification for his actions. The fact remains, however, that the facts establish as a matter of law that [Employer] did possess the requisite degree of control over [Claimant] to establish an employee relationship....

(WCJ's Findings of Fact, No. 38.)

**58**

with Claimant's testimony.[4] (WCJ's Findings of Fact, No. 4.)

Based on his findings, the WCJ concluded that Claimant was an employee, not an independent contractor.[5] (WCJ's Findings of Fact, Nos. 34, 35; WCJ's Conclusions of Law, Nos. 3, 4.) In arriving at that conclusion, the WCJ considered the four factors articulated in *Chichester School District v. Workmen's Compensation Appeal Board (Fox)*, 140 Pa.Cmwlth. 224, 592 A.2d 774 (1991), as establishing an employer-employee relationship: the employer's right to (1) select the employee, (2) remove the employee, (3) direct the employee's manner of performance and (4) control the employee. (WCJ's Conclusions of Law, No. 3.) With respect to the fourth factor, the WCJ also determined that the following similarities between Claimant's situation and the employee's situation in *Samuel J. Lansberry, Inc. v. Workmen's Compensation Appeal Board (Switzer)*, 168 Pa.Cmwlth. 64, 649 A.2d 162 (1994), compelled the conclusion that, as in that case, Employer "did possess the requisite degree of control over" Claimant to establish an employment relationship:

1. Both Agreements have exclusive possession, control and use of the tractor subject to the Agreement to [sic] the employer;

4. The WCJ also found the testimony of Claimant's medical expert credible. (WCJ's Findings of Fact, No. 35.)

5. The WCJ also concluded that Claimant's injury occurred while in the course and scope of his employment with Employer. (WCJ's Conclusions of Law, No. 5.) He also found, based on Claimant's medical evidence, that Claimant was disabled from returning to work as a truck driver. (WCJ's Findings of Fact, No. 35.)

6. The third similarity stated by the WCJ was the same as the second.

7. In its decision of January 28, 1997, the WCAB also reversed and modified the WCJ's decision with respect to the WCJ's determination of Claimant's average weekly wage. (R.R. 733a, 735a.) In addition, the WCAB granted the petition of Fidelity Security Life Insurance Company (Fidelity), which claimed

2. The employers in both cases inspected the tractor for safety;

4.[6] Both employers could terminate the lease if the vehicles were not in satisfactory condition or were not operated to their satisfaction;

5. Although neither employer specified the route to be taken, both employers advised the driver of the destination and time of arrival;

6. The trailers in both cases had the name of the employers' companies attached. Additionally, in the instant case, the employer's name was also attached to the tractor;

7. Both employers did not permit the drivers to operate or permit operation of the vehicles for any purpose other than pursuant to the terms of the Agreement;

8. Both employers required the driver to undergo a physical examination;

9. Both employers provided the driver with a fuel card in the employer's name, and both employers later deducted the amounts charged from its payments to the drivers.

(WCJ's Conclusions of Law, No. 4.)

Employer appealed to the WCAB, which affirmed the WCJ's determination that Claimant was Employer's employee.[7]

the right of subrogation out of Claimant's award, to intervene, and the WCAB remanded the case to the WCJ for the sole purpose of determining Fidelity's right to subrogation. (R.R. 733a–35a.) Employer appealed to this court, which, on March 25, 1997, quashed Employer's appeal as premature. (Docket No. 0546 C.D.1997.) By decision of September 15, 1997, the WCJ, on remand, recognized Fidelity's right to subrogation in the amount of $10,000.00. On October 10, 1997, Employer appealed to the WCAB from the WCJ's decision on the remanded claim to preserve all issues raised in Employer's original appeal, filed March 20, 1995, which issues were addressed by the WCAB but not by the Commonwealth Court when it quashed Employer's appeal. (R.R. 763a.) On January 8, 1999, the WCAB "reaffirmed [its] prior holdings, affirming that Claimant was an employee of [Employer] at the time of the December 6, 1989 work injury...." (R.R. 768a.)

(R.R. 726a.) With respect to the WCJ's credibility findings, the WCAB determined that the WCJ had "clearly considered" Claimant's burglary conviction and that it is "within the exclusive province of the [WCJ] to accept Claimant's testimony as credible, to reject the contradictory testimony of [Employer's] management personnel, and to determine the weight to be given Claimant's testimony in view of his burglary conviction...." (R.R. 727a–28a.)

On appeal to this court,[8] Employer asserts three points of error: (1) Claimant failed to prove the existence of an employment relationship; (2) the WCJ erred in his treatment of Claimant's burglary conviction; and (3) the WCJ's adoption of Claimant's counsel's proposed findings of fact and conclusions of law deprived Employer of a reasoned decision. We discuss each of Employer's arguments seriatim.

### Employment relationship

■ A claimant seeking workers' compensation benefits has the burden of proving that an employment relationship existed at the time of the injury. *Northern Central Bank and Trust Co. v. Workmen's Compensation Appeal Board (Kontz)*, 88 Pa.Cmwlth. 277, 489 A.2d 274 (1985). Here, because he satisfied all other requirements, Claimant, as an employee, would be entitled to workers compensation benefits, but as an independent contractor Claimant would not be entitled to such benefits. *Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 706 A.2d 400 (Pa. Cmwlth.1998), *appeal granted*, —— Pa. ——, ——A.2d ——, 1999 WL 163919 (No. 133 W.D.1998, filed March 26, 1999). Employer argues that the WCJ erred in finding that Claimant was an employee, as opposed to an independent contractor, at the time of his injury. We disagree.

■ As a framework for determining whether an employment relationship existed at the time of injury, our supreme court has identified the following factors to be considered:

Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the [alleged] employer, and also the right to terminate the employment at any time.

*Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262, 266 (Pa.Cmwlth.1995), quoting *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968). None of the above factors absolutely controls the outcome of a particular case; rather each case must be determined on its own facts. *Nevin Trucking*. The "most persuasive indicator of a claimant's employee or independent contractor status lies in the [Employer's] **right** to control either the work to be done or the manner in which the work is to be accomplished." *Universal Am–Can*, 706 A.2d at 402 (emphasis in original). If the alleged employer possesses that right, an employment relationship likely exists. *Id.*

■ Further, the fact that the lease agreement between Claimant and Employer designates Claimant as an independent contractor is but one factor to be consid-

---

8. Our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). Whether a claimant is an independent contractor or an employee is a question of law fully reviewable by this court. *Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 706 A.2d 400 (Pa.Cmwlth.1998), *appeal granted*, —— Pa. ——, —— A.2d ——, 1999 WL 163919 (No. 133 W.D.1998, filed March 26, 1999).

ered. *See Hiller v. Workmen's Compensation Appeal Board (Deberardinis)*, 131 Pa. Cmwlth. 189, 569 A.2d 1024 (1990). Indeed, we have previously considered an employer's right to control a truck driver operating under a lease agreement similar to the one Claimant operated under in this case, *see, e.g., Universal Am–Cam; Nevin Trucking; Samuel J. Lansberry, Inc.;* and *North East Express, Inc. v. Workmen's Compensation Appeal Board (Woytas)*, 77 Pa.Cmwlth. 255, 465 A.2d 724 (1983); and, identifying various factors, we determined that, despite the agreement, the Employer exercised the requisite control over the driver to establish an employment relationship. Many of those same factors are present here.

First, Employer required Claimant to submit his equipment for inspection at Employer's behest at facilities approved by Employer. (WCJ's Findings of Fact, No. 6.) Second, Employer had the right to accept or reject substitute drivers. (WCJ's Findings of Fact, No. 10.) Third, Employer could terminate Claimant for any reason, including Claimant's failure to abide with any law or regulation or failure to notify Employer of his unavailability for work.[9] (WCJ's Findings of Fact, Nos. 6, 11.) Fourth, Employer restricted Claimant's use of his tractor to business purposes. (WCJ's Findings of Fact, Nos. 5, 14.) Fifth, Employer required that Claimant maintain logbooks. Sixth, Employer provided Claimant with a credit card in Employer's name for the purchase of fuel, and Employer deducted the amounts charged on the card from its payments to Claimant. (WCJ's Findings of Fact, No. 16.) Seventh, Claimant received safety award bonuses from Employer. (WCJ's Findings of Fact, No. 21.)

Moreover, other indicia of Employer's control over Claimant are present here. Specifically, Claimant was required to submit to mandatory physical examinations, including drug testing, at Employer's behest by physicians, and at facilities, chosen by Employer and using methods approved by Employer. (WCJ's Findings of Fact, Nos. 6, 19.) Employer required Claimant to attend its orientation program. (WCJ's Findings of Fact, No. 8.) Claimant was required to contact Employer each morning. (WCJ's Findings of Fact, No. 17.)

■ Despite these numerous indicia of control, Employer points to various facts that it argues demonstrate its lack of control over Claimant's work. We are not persuaded by Employer's examples. For instance, Employer points out that it did not specify the route to be driven by Claimant. (Employer's brief at 29.) We are cognizant that, where a lessee merely instructs a driver where to pick up a load and where to deliver it, this is insufficient to establish the minimum control necessary for an employment relationship. *Red Line Express Co., Inc. v. Workmen's Compensation Appeal Board (Price)*, 138 Pa. Cmwlth. 375, 588 A.2d 90 (1991), *appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992). Here, however, Employer did more than merely instruct Claimant as to where to pick up and drop off his loads; in informing Claimant of the destination of each load, Employer also set a required time of arrival. (WCJ's Findings of Fact, Nos. 12, 34.) *See North East Express.* Additionally, Employer paid Claimant on a mileage

---

**9.** Employer argues that the WCJ ignored the fact that either party could terminate the Agreement without cause so long as advance written notice was given. (Employer's brief at 29.) Relying on *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 158 Pa.Cmwlth. 76, 631 A.2d 693 (1993), *appeal denied*, 537 Pa. 613, 641 A.2d 313 (1994), Employer contends that such mutuality is a "critical" factor in determining whether an employment relationship exists.

We disagree that *Johnson* stands for the proposition that both parties' ability to terminate the agreement is a critical factor. *Johnson* did not discuss the employee's ability to terminate the employment relationship. Furthermore, Employer's right to terminate the relationship is but one factor to be considered in determining whether an alleged employer has the requisite control over the manner in which an employee performs his or her work.

basis, based on the shortest available route. (WCJ's Findings of Fact, Nos. 12, 34.) Thus, although Claimant could have opted to take a different route, he would have lost pay for doing so and would likely not have met his required time of arrival. In effect then, employer did specify Claimant's delivery routes. Moreover, Employer did not require its "company" drivers to take specific routes and, therefore, we can draw no distinction between employees and independent contractors on that basis. (WCJ's Findings of Fact, No. 24.)

Employer also argues that the WCJ's finding that Claimant worked exclusively for Employer, (WCJ's Findings of Fact, No. 18), ignored the "crucial" fact that Claimant had the right to contract with other shippers. (*See* Employer's brief at 33.) However, Claimant only had this right subject to limitations imposed by Employer. Claimant had to provide Employer with advance notice that he was taking his tractor "out-of-service," (R.R. 548a), and Claimant could lease his tractor only to "other authorized carriers" *if* Employer did "not have freight available on a reasonably regular basis." (R.R. 548a.)

■ Also, Employer's assertion that Claimant had the ability to decline work whenever he chose does not establish him as an independent contractor. Such freedom merely indicates that Claimant had flexibility in determining his work schedule, not that an employment relationship did not exist. *See Baum v. Workers' Compensation Appeal Board (Hitchcock)*, 721 A.2d 402 (Pa.Cmwlth.1998).

■ Next, relying on *Johnson v. Workmen's Compensation Appeal Board (Dubois Carrier Express )*, 158 Pa.Cmwlth. 76, 631 A.2d 693 (1993), *appeal denied,* 537 Pa. 613, 641 A.2d 313 (1994), Employer asserts that it is "particularly pertinent" that Claimant had the right to hire lumpers to load and unload his trucks.[10] (Employer's

brief at 29–30.) We disagree. While it is true that "[e]mployees are generally not empowered with hiring other personnel," *Johnson,* 631 A.2d at 698, that is but one factor to be considered in determining an employer's right to control the manner in which an employee performs his or her work. In this case, numerous other factors outweigh this factor, particularly where Claimant's ability to hire personnel was severely limited. Unlike the claimant in *Johnson,* Claimant here was not free to hire substitute drivers; instead Employer maintained the right to accept or reject substitutes. (WCJ's Findings of Fact, No. 10.)

Citing *Maurer v. Workmen's Compensation Appeal Board (American Trans Freight, Inc.),* 116 Pa.Cmwlth. 224, 541 A.2d 436 (1988), Employer contends that it is "particularly significant" and even "pivotal" that Claimant was responsible for maintaining his own workers' compensation coverage. (Employer's brief at 30.) We cannot agree. Importantly, the issue in *Maurer* was not whether the injured driver was an independent contractor or an employee; indeed, the driver's employee status was not challenged. Rather the case involved the question of which of two possible employers was liable for the driver's injury. In deciding that case, we held that an employer could not deny the existence of an employment relationship when it provided workers' compensation coverage for that employee; we did not hold that an employment relationship does not exist where the employer does not carry coverage or where the employee maintains his or her own coverage. Here, although the Agreement provides that Claimant "shall retain sole **financial** responsibility ..." for workers' compensation insurance, it does not allow Claimant control over that decision. Indeed, an examination of the Agreement reveals that, if Claimant did not provide Employer with proof of

10. We also note that Employer "would pay for lumpers on occasion...." (WCJ's Find-

ings of Fact, No. 20.)

current coverage, Employer was entitled to deduct money from Claimant's wages so that Employer could pay for Claimant's coverage. (WCJ's Findings of Fact, No. 6.) Indeed, Employer "took the liberty" of enrolling Claimant in NAIT's occupational accident program in lieu of requiring him to obtain workers' compensation insurance and made deductions from his pay for that program. (WCJ's Findings of Fact, No. 7.)

Employer also argues that some of the controls it exercised over Claimant's work, such as the requirement to keep logbooks and to submit to mandatory inspections, were required by federal regulations. Similarly, we note that the display of Employer's name and ICC permit number on leased vehicles is required by federal regulation. *See* 49 C.F.R. §§ 376.11(c) and 390.21. However, we have held in a similar case that an Employer's statutory duty to control its truck driver rendered that driver an employee, not an independent contractor. *See Universal Am–Cam.* The same result inheres here.

■ Based on the numerous indicia of Employer's control over the manner of Claimant's work, we agree with the WCAB that substantial evidence supports the WCJ's conclusion that Claimant was an employee, and not an independent contrac-

tor, of Employer at the time he was injured.[11]

## Claimant's burglary conviction

■ Relying on *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987), Employer contends that, in light of Claimant's May 21, 1993 burglary conviction, the WCJ erred in crediting Claimant's testimony. (Employer's brief at 38.) According to *Randall,* if the conviction is for an offense involving dishonesty or false statement[12] and is less than ten years old, "impeachment by prior criminal offense is automatically allowed." *Russell v. Hubicz,* 425 Pa.Super. 120, 624 A.2d 175, 182 (1993), *appeal denied,* 535 Pa. 670, 634 A.2d 1117 (1993). However, to automatically allow impeachment by a prior conviction is not tantamount to requiring that the WCJ find Claimant's testimony incredible. Rather, the effect of impeachment is merely to call into question the veracity of a witness. *See* Black's Law Dictionary 753 (6th ed.1990). Thus, although Claimant's conviction raised the issue of Claimant's credibility with respect to the last three of his four days testimony,[13] it still left the determination of Claimant's credibility for those three days of testimony for the WCJ.[14] In other words, it was up to the WCJ, as the trier of fact, to decide the weight to be given to Claimant's conviction. Here, we agree with the WCAB that

11. We do agree with Employer on one point. Employer correctly contends that the fact that its identifying signs were affixed to Claimant's tractor does not create a rebuttable presumption that Claimant is its employee because the signs indicated that Claimant's tractor was under lease to Employer. *Red Line Express.* Accepting Employer's contention, we note that it does not alter the outcome here. To support his decision, the WCJ may have relied on the fact that Employer's name was on Claimant's tractor, (WCJ's Findings of Fact, No. 13; WCJ's Conclusions of Law, No. 4.6); however, the WCJ did not find that that fact created a rebuttable presumption that Claimant was Employer's employee. It was simply one of many factors that the WCJ considered in determining that an employment relationship existed.

12. Pennsylvania courts have indicated that burglary is a crime involving dishonesty or false statement. See *Randall.* Although *Randall* was a criminal case, the same rule applies to civil cases. *Russell v. Hubicz,* 425 Pa.Super. 120, 624 A.2d 175 (1993).

13. Because Claimant's conviction occurred after his first deposition, it is not a "prior" conviction with respect to that testimony and therefore has no bearing on Claimant's credibility during that testimony.

14. Indeed, section 5.20 of the Pennsylvania Suggested Standard Jury Instructions (Civil) merely directs that, in deciding whether or not to believe a witness and in determining what weight, if any, to give the witness' testimony, the trier of fact "**may** consider evidence that the witness has been convicted of a crime."

the WCJ "clearly considered" Claimant's burglary conviction. (R.R. 728a.) After doing so, the WCJ was free to exercise his role as fact-finder and accept Claimant's testimony.[15]

### The WCJ's adoption of Claimant's proposed findings of fact and conclusions of law

Employer contends that, by adopting Claimant's proposed findings of fact and conclusions of law, the WCJ ignored relevant law and significant relevant evidence and, thus, the WCJ's Findings of Fact are either not supported by the record evidence or were otherwise in error. (Employer's brief at 42.) Employer points to nine such findings of the WCJ.

First, Employer asserts that the WCJ "repeatedly stated in his decision that [Employer], through its workers' compensation carrier, was responsible for Claimant's injury," when the "evidence is undisputed that [Employer] does not have workers' compensation insurance covering Claimant in this matter." (Employer's brief at 42.) We agree that the decision mistakenly indicates that the WCJ "found as a **fact** that [Employer] through its insurance carrier, is responsible for [Claimant's] reasonable and necessary medical treatment as a result of his" work injury. (*See* WCJ's Findings of Fact, No. 37.) (Emphasis added.) However, it is clear that the WCJ intended that "finding of fact" to be his "conclusion of law." The decision clearly recognizes Employer's position that Claimant was an independent contractor, as opposed to its employee, and therefore not covered by its workers' compensation insurance policy. The WCJ, however, concluded, based upon the over-

all relationship between Claimant and Employer, that Claimant was an employee and thus covered as a matter of law by Employer's workers' compensation policy. (WCJ's Conclusions of Law, Nos. 3 and 4.)

Second, Employer contends that the WCJ ignored Claimant's income tax returns, the Independent Contractor Operating Agreement and Claimant's application for membership in the National Association of Independent Truckers (NAIT) in which Claimant stated he was not an employee of a trucking company. (Employer's brief at 42–43.) However, the WCJ's decision indicates that the WCJ considered those documents in determining that Claimant was an employee. (*See* WCJ's Findings of Fact, Nos. 6, 7, 27, 28, 34.) The WCJ, however, is not required to draw the same conclusions as Employer from those documents. Employer has pointed to nothing in those documents which convinces us that Claimant was an independent contractor. Moreover, with respect to Claimant's application for membership in NAIT, Claimant credibly testified that he did not sign that application form until after the date of the accident. (R.R. 53a–54a.)

Third, Employer argues that the WCJ's finding that Claimant attended Employer's orientation program is incomplete. Employer points out that the WCJ failed to mention that employees and independent contractors attended different orientation programs. (Employer's brief at 42 and 43, referring to WCJ's Findings of Fact, No. 8.) However, regardless of which program Claimant attended, there is no question that Claimant attended an orientation program conducted by Employer. Thus, the

15. We distinguish this case from cases tried before a jury, where if a judge disallows impeachment evidence, the evidence is not heard, and therefore not known, by the trier of fact. In contrast, here, the WCJ was the trier of fact. He heard, and therefore was aware of, the evidence of Claimant's conviction when he rendered his decision. (*See* R.R. 403a–05a, 462a–65a, 559a–96a.) The WCJ's statements that it was "extremely un-

fortunate" that Claimant was involved in the burglary and that there was "no justification for his actions" indicate that the WCJ did consider the conviction. Despite his consideration of Claimant's conviction, the WCJ concluded that the facts established, as a matter of law, that Employer's control over Claimant was sufficient to establish an employment relationship. (WCJ's Findings of Fact, No. 38.)

WCJ correctly included that fact when considering Employer's power to direct and control Claimant.

■ Fourth, Employer asserts that the WCJ erred by finding that Employer inspected Claimant's tractor periodically for safety, while failing to mention that "Claimant, at [Employer's] direction, merely complied with Interstate Commerce Commission [r]equirements." (Employer's brief at 43, referring to WCJ's Findings of Fact, No. 9.) Again, we disagree. Claimant testified that Employer performed the inspections at its terminal. (R.R. 450a.) Moreover, under *Universal Am–Can*, the fact that the inspections were required by the federal government does not affect the WCJ's conclusion regarding Employer's right to control Claimant.

■ Fifth, Employer argues that the record contains no evidence to support the WCJ's finding that Employer could terminate the Independent Contractor Operating Agreement if the tractor was not in satisfactory condition or not operated to Employer's satisfaction. (Employer's brief at 43, referring to WCJ's Findings of Fact, No. 11.) Because the Agreement clearly gave Employer the right to terminate the Agreement without cause, the fact that the Agreement did not contain a separate provision permitting Employer to terminate it if the tractor was not in satisfactory condition does not affect the WCJ's conclusion regarding Employer's right to control Claimant. Moreover, a reasonable interpretation of that Agreement, when read in conjunction with the Installment Sale Contract and Security Agreement, is that Employer had considerable control over Claimant's maintenance and operation of the tractor. (R.R. 693a–701a. *See also* Claimant's testimony at R.R. 397a.) Finally, Claimant testified credibly that, if the

tractor did not pass Employer's inspection, Claimant could not drive it on behalf of Employer. (R.R. 50a.) Thus, the record amply supports finding number eleven.

■ Sixth, Employer claims that the WCJ erred in finding that Employer had the right to terminate the Agreement, but failing to mention that Claimant had the same right. (Employer's brief at 43–44, referring to WCJ's Findings of Fact, No. 11.) However, Claimant testified that, if he terminated the Agreement, Employer would take his truck. (R.R. 398a.) Moreover, the fact that a worker may terminate an agreement or quit a job does not establish that he or she is not an employee. It is simply one of many factors to weigh.

Seventh, Employer maintains that the WCJ erred in finding that Claimant's use of his tractor was limited by the terms of both the Agreement and the Installment Sale Contract and Security Agreement (Installment Sale Contract). Employer contends that the Agreement between Claimant and Employer provides for no such limitation and points out that, although the Installment Sale Contract between Claimant and Schneider National Leasing includes the limitation, Employer was not a party to that contract. (Employer's brief at 44.) Employer is correct that it is the Installment Sale Contract, and not the Agreement, which prohibits Claimant's personal use of the tractor. Nevertheless, the record contains substantial evidence to support the conclusion that Employer was responsible for the limitation on Claimant's use of the tractor.

A review of the record establishes the close relationship between Schneider National Leasing, Employer,[16] and the Agreement. We note that the Installment Sale Contract refers repeatedly to the Agreement.[17] Further, the Installment Sale

---

16. Indeed, Employer's witness, Mark Wagner, testified that he was employed by yet another Schneider entity, Schneider Logistics. (R.R. 108a.)

17. The Installment Sale Contract requires that the tractor operate under an Independent Contractor Operating Agreement with Trans–National Truck of Dallas Texas (TNT). (R.R.

Contract gave Schneider National Leasing, Inc. a security interest in Claimant's tractor. Claimant testified that, as a safety award bonus, Employer gave him a jacket with "Schneider National Leasing" on the back. (R.R. 451a–52a.) And, most significantly, Claimant testified that Employer prepared the Installment Sale Contract. (R.R. 426a.) This close relationship is sufficient to support the WCJ's finding that Employer limited Claimant's use of his tractor.

■ Eighth, Employer claims that the record did not support the WCJ's finding that Employer required Claimant to use designated stops and to submit logs after each trip, where Claimant acknowledged that he could purchase fuel wherever he wanted and was required only to comply with Department of Transportation requirements regarding logbooks. (Employer's brief at 44–45, referring to WCJ's Findings of Fact, Nos. 15 and 16.) As stated previously, under *Universal Am–Can*, the fact that the logbooks were required by the federal government does not affect the WCJ's conclusion regarding Employer's right to control Claimant by obligating Claimant to submit logs. With respect to fuel purchases, we believe that the WCJ's finding number sixteen, that "[Claimant] was only permitted to obtain fuel from locations designated by [Employer]," is not so much unsupported as incomplete. Claimant testified that he could use Employer's credit card to obtain fuel only at designated locations, but he also stated that he could obtain fuel at non-designated locations so long as he did not use Employer's credit card. (R.R. 69a.) Thus, even when the finding is completed, it still signifies Employer's control over Claimant's use of the tractor and, thus, supports the WCJ's conclusion that Claimant was Employer's employee.

■ Ninth, Employer argues that the record does not support the WCJ's finding that Claimant was required to contact the dispatcher each morning. Employer contends that its witness, Mark Wagner, did not testify that Claimant was required to contact Employer's dispatcher each morning, but rather Wagner testified that Employer required independent contractors to contact dispatchers daily only when they were hauling a load and that "independent contractors could go longer than a month without calling in so long as the independent contractor was not hauling a load for [Employer]." (Employer's brief at 45, referring to WCJ's Findings of Fact, No. 17.) However, Claimant testified that daily call-ins were required, and the WCJ believed Claimant's testimony on this point. (WCJ's Findings of Fact, No. 3; *see* R.R. 23a.) Questions of credibility are within the exclusive province of the WCJ who, as the ultimate factfinder, is free to accept or reject the testimony of any witness, in whole or in part. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558 (Pa.Cmwlth.1997). Claimant's credible testimony supports the WCJ's findings of fact.

Because the WCJ's findings withstand Employer's challenge and support a conclusion that Claimant is an employee, not an independent contractor, the WCAB did not err in affirming the WCJ's decision awarding benefits to Claimant. Accordingly, we affirm the order of the WCAB.

**O R D E R**

AND NOW, this 14th day of September, 1999, the order of the Workers' Compensation Appeal Board, dated January 8, 1999, is hereby affirmed.

■

696a.) Claimant testified that TNT became Schneider National Leasing. (R.R. 429a.)